In the District Court of the United States
For The District of South Carolina

BEAUFORT DIVISION

RECEIVED
USDC CLERK, CHARLESTON, SC

2005 JUL 11  P 12: 08

| | |
|---|---|
| Francisco Batista Dominicci, 17902-069, ) | Civil Action No. 9:04-1878-HFF-GCK |
|                  Plaintiff, ) | |
| vs. ) | **REPORT AND RECOMMENDATIONS** |
| ) | **OF THE MAGISTRATE JUDGE** |
| Mr. Joseph Smith, Warden; M. Miller-Blanks, ) | |
| Unit Manager; Richard James, Correctional ) | |
| Counselor at FCI Edgefield; Brian Gilmore, ) | |
| Lieutenant at FCI Edgefield; and Kim Loosier, ) | |
| Inmate Systems Manager (ISM); ) | |
| Case Manager Unknown Name; SIA Lt. ) | |
| Unknown Name; and Gang Specialist ) | |
| Unknown Name, ) | |
|                  Defendants. ) | |

## I. INTRODUCTION

The Plaintiff, Francisco Batista Dominicci ("Plaintiff"), Register Number 17902-069, is a federal prisoner who currently is incarcerated in the Federal Correctional Institution in Coleman, Florida.[1] Plaintiff was incarcerated in the Federal Correctional Institution in Edgefield, South Carolina ("FCI Edgefield") from October 24, 2002 to April 10, 2003, during which time he alleges that the events that give rise to this action occurred. Proceeding *pro se* and *in forma pauperis*, Plaintiff commenced this civil rights action against the following eight (8) defendants: Mr. Joseph Smith, Warden ("Warden Smith"); M. Miller-Blanks, Unit Manager ("Unit Manager Miller-Blanks"); Richard James, Correctional Counselor at FCI Edgefield ("Counselor James"); Brian Gilmore, Lieutenant at FCI Edgefield ("Lt. Gilmore"); Kim Loosier,[2] Inmate Systems Manger ("ISM") ("ISM Loosier); Case Manager Unknown Name ("Unknown Case Manager");

---

[1] In September 2004, during the time this action was pending before the court, Plaintiff was transferred to the Federal Correctional Institution in Coleman, Florida. [15-1]

[2] Kim Loosier is referred to by the Defendants in certain pleadings as Kim Loosier O'Connell.

SIA Lt. Unknown Name ("Unknown SIA Lieutenant"); and Gang Specialist Unknown Name ("Unknown Gang Specialist").[3]

Pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Rule 73.02(B)(2), D.S.C., the undersigned United States Magistrate Judge is authorized to review prisoner petitioners challenging conditions of confinement and submit findings and recommendations to the District Court.

## II. THE *PRO SE* COMPLAINT

As a *pro se* litigant, Plaintiff's pleadings are accorded liberal construction. Hughes v. Rowe, 449 U.S. 5 (1980) (*per curiam*); Estelle v. Gamble, 429 U.S. 97 (1976); Haines v. Kerner, 404 U.S. 519 (1972); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied*, Leeke v. Gordon, 439 U.S. 970 (1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. Hughes, 449 U.S. 5 (1980). Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (Small v. Endicott, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).

---

[3] The Plaintiff did not identify the defendants in the caption of his complaint, but set forth their names or job titles, as identifiers, in the text of the first page of his complaint.

Because the individual defendants are federal employees and thus are not amenable to suit under Section 1983,[4] this action will be construed under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). A Bivens action with respect to federal officials is the judicially established equivalent of a statutory 42 U.S.C. § 1983 lawsuit against state officials to vindicate violations of constitutionally protected rights. Zimbleman v. Savage, 228 F.3d 367, 370 (4th Cir. 2000).

### III. *IN FORMA PAUPERIS* STATUS

Plaintiff brought this action *in forma pauperis* ("IFP") under 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without paying the administrative costs before proceeding with the lawsuit. To protect against possible abuses of this privilege, the statute allows a district court to dismiss the case at any time upon a finding that the action "is frivolous or malicious" or "fails to state a claim on which relief may be granted[.]"[5] A finding of frivolity can be made where the complaint "lacks an arguable basis either in law or in fact." Denton v. Hernandez, 504 U.S. 25, 31 (1992). Hence, under Section 1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed *sua sponte*. Neitzke v. Williams, 490 U.S. 319 (1989); Allison v. Kyle, 66 F.3d 71 (5th Cir. 1995). Thus, the court may dismiss a claim as "factually frivolous" under Section 1915(e) if the facts alleged are clearly baseless. Denton v. Hernandez, supra. In making this determination, the court is not bound to accept without question the truth of the plaintiff's allegations, but rather need only weigh the plaintiff's factual allegations in his favor. Id.

---

[4] In District of Columbia v. Carter, 409 U.S. 418 (1973), the Supreme Court held that Section 1983 applied only to those deprivations of rights that were accomplished under the laws of "any state or territory" and did not extend to actions taken by the federal government, its officers, or its employees.

[5] See 28 §§ 1915(e)(2)(B)(i), (ii).

## IV. FACTUAL BACKGROUND

Plaintiff alleges that during the time he was incarcerated in FCI Edgefield, the defendants violated his Eighth Amendment rights by not taking reasonable measures to ensure his personal safety. Specifically, Plaintiff contends that the defendants acted with deliberate indifference by failing to take proper precautions to protect Plaintiff after Plaintiff told them that his life was in danger due to threats from members of the Neta gang who also were incarcerated in the prison.[6]

The record reflects that Plaintiff arrived at FCI Edgefield on October 24, 2002, and requested protective custody on October 26, 2002 due to alleged threats made by members of the Neta gang. Plaintiff was immediately placed in the Special Housing Unit ("SHU") for his safety, where he remained until January 2, 2003. He asked to be released on that date, but a few hours later, he again requested protective custody because of new threats made by the Neta gang. Lt. Gilmore was in charge of the investigation as to whether Plaintiff needed protective custody; a review of camera footage showed a known Neta gang member and another inmate enter Plaintiff's cell, a leave a few minutes later. When interviewed, the two inmates gave conflicting reasons about the purpose of their visit to Plaintiff. Therefore, Lt. Gilmore recommended that Plaintiff be transferred to another FCI facility in order to ensure his safety. On April 10, 2003, Plaintiff was transferred to FCI Talladega.

Plaintiff does not allege that any inmate assaulted him or caused him physical harm while he was incarcerated at FCI Edgefield. However, Plaintiff claims the defendants acted in violation of rights guaranteed by the First, Fifth, and Fourteenth Amendments. To the extent that Plaintiff alleges violations of his rights under the First and Fifth Amendments, these allegations are without merit. Plaintiff's complaint does not appear to set out any facts that would support a claim under the First Amendment, either with respect to freedom of speech or freedom of

---

[6] The Plaintiff was prosecuted, found guilty, and sentenced in the United States District Court for the District of Puerto Rico. See Batista-Dominicci v. Gil-De-La-Madrid, 39 Fed.Appx. 623, 2002 WL 1551701 (1st Cir. (Puerto Rico)) (*per curiam*). Plaintiff alleges that the Neta gang is a Puerto Rican gang. See Plaintiff's Opposition [40-1] at Exhibits 5 and 6.

association. Likewise, Plaintiff's Fifth Amendment right against self incrimination has not been violated; as this right is implicated only when evidence is proffered during a criminal trial (see Riley v. Dorton, 115 F.3d 1159, 1164-65 (4th Cir. 1997)) and has no application in the present case.

Therefore, this court is left to analyze whether Plaintiff has stated violations of the Fourteenth Amendment when he contends that during the time he was housed, at his request, in FCI Edgefield's SHU: (1) he was denied access to the courts because his legal papers and property were not made available to him;[7] (2) he was denied the right to exhaust the Bureau of Prison's ("BOP's") administrative grievance process because the proper forms were withheld from him; (3) he did not have access to a typewriter; (4) he was unable to obtain copies of court documents; (5) he did not have access to a person trained in the law, and (6) he was denied the opportunity to make a telephone call.[8] Plaintiff requests damages in the amount of $25,000 from each defendant, for a total of $200,000.

## V.  PROCEDURAL HISTORY

Plaintiff initially filed this civil rights complaint on April 15, 2004 in the United States District Court for the Eastern District of Kentucky (No 04-CV-173-KSF),[9] at which time he was incarcerated in the Lexington Federal Medical Center in Lexington, Kentucky. As there is no special venue statute for civil rights actions, 28 U.S.C. § 1391 is controlling. Jones v. Bales, 58

---

[7] Plaintiff contends that his transfer to Edgefield, his assignment to the SHU, and his lack of access to his legal documents caused him to fail to timely file his Petition for Certiorari with the United States Supreme Court. See Plaintiff's Complaint [1-1] filed in the Eastern District of Kentucky. at p. 3.

[8] See Plaintiff's Complaint [1-1], filed in the Eastern District of Kentucky, at pp. 1-10.

[9] In the event that a limitations issue were to arise, the Plaintiff would have the benefit of the holding in Houston v. Lack, 487 U.S. 266 (1988) with respect to the "delivery date" of his complaint. However, the "delivery date" of Plaintiff's pleadings initially could not be determined from a review of the file because the file did not include the original envelope in which Plaintiff mailed his complaint. In view of the liberal construction afforded *pro se* complaints, in this case the court determined that the date that Plaintiff signed the complaint (April 15, 2004) would be deemed the provisional the "delivery date" (the date Plaintiff delivered his pleadings to prison officials for mailing). See Order [2-1] at n.1. Subsequently, the Plaintiff provided the court with a copy of the Mail Log from the Lexington, Kentucky facility which indicated that Plaintiff's pleadings had been delivered to the prison mailbox on April 16, 2004. [3-1]

none of them had been personally served, as required by Rule 4(e), and thus the court lacked personal jurisdiction over those Named Defendants. Furthermore, to the extent that Plaintiff was suing the Named Defendants in their official capacities, the Named Defendants argued that the Plaintiff's Bivens action should be dismissed because Plaintiff failed to allege a waiver of sovereign immunity by the United States in his complaint.[10] [20-1]

On November 18, 2004, the undersigned issued an Order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff that the Named Defendants had filed an Amended Motion to Dismiss, Plaintiff was required to respond, and, if he failed to respond, this court might grant the relief requested. [22-1] On December 2, 2004, the Plaintiff informed the court by letter that he had not been served with the Named Defendants' Amended Motion to Dismiss. [23-1]

On December 9, 2004, the undersigned issued another order directing that the Clerk of Court issue new summonses and Forms USM-285, submitted by the Plaintiff, to the Marshal for service of process. [24-1] Thereafter, service was obtained on Case Manager Unknown Name, identified as Case Manager Ricky Kidd ("Case Manager Kidd") and Richard James, Correctional Counselor at FCI Edgefield ("Counselor James"). Lt. Gilmore again was served with Plaintiff's complaint.[11]

On December 10, 2004, the Plaintiff filed a motion requesting an extension of time in which to respond to the Named Defendants' Amended Motion to Dismiss, which was granted by the undersigned by Order filed on December 13, 2004. [25-1; 26-1] On January 14, 2005, Plaintiff filed his opposition to the Named Defendants' Amended Motion to Dismiss. [33-1]

---

[10] This court will consider Lt. Gilmore's separate Motion to Dismiss [19-1] as mooted by the subsequent filing of the Named Defendants' Amended Motion to Dismiss.

[11] Lt. Gilmore was served on October 14, 2004 and again on December 23, 2004. [18-1; 37-1] Case Manager Kidd was served on December 17, 2004. [27-1] Counselor James was served on December 23, 2004. [36-1] Service could not be accomplished on the defendants Gang Specialist Unknown Name [13-1; 35-1], M. Miller-Blanks [7-1; 30-1], SIA Lt. Unknown Name [11-1; 34-1], Joseph Smith [9-1; 28-1], and ISM Kim Loosier O'Connell [10-1; 29-1].

F.R.D. 453 (D.C. 1972), *aff'd*, 480 F.2d 805 (1972). Section 1391 requires that actions not based solely upon diversity of citizenship be brought in the district where all the defendants reside or in which the claim arose. LaVay Corp. v. Dominion Federal Sav. & Loan Ass'n, 830 F.2d 522, 526 (4th Cir. 1987). Accordingly, on June 9, 2004, the Honorable Karl S. Forester, Chief Judge of the United States District Court for the Eastern District of Kentucky *sua sponte* issued a Transfer Order to transfer the above-captioned case to this District, pursuant to 28 U.S.C. § 1406(a), on the grounds that the alleged events giving rise to this action occurred in the District of South Carolina and the named defendants presumably lived in the state where they worked.

Thereafter, on July 12, 2004, the undersigned United States Magistrate Judge directed the Plaintiff to complete a Summons and a Process Receipt and Return ("Form USM 285") for each of the eight defendants. [2-1] The Plaintiff complied with this order, the undersigned authorized service of process on the defendants, and the summonses were issued. [4-1; 5-1] On September 17, 2004, the Clerk of Court received notice that returns of service were unexecuted with respect to seven of the eight defendants, *viz.*, Warden Smith [9-1], Unit Manager Miller-Blanks [7-1], Counselor James [12-1], ISM Loosier [10-1], Unknown Case Manager [8-1], Unknown SIA Lieutenant [11-1], and Unknown Gang Specialist [13-1]. The undersigned again ordered the Plaintiff to provide sufficient information for service of process, complete the summonses and Forms USM 285 so that the defendants could be served, and granted Plaintiff's motion for an extension of time in which to do so. [14-1; 16-1; 17-1]

On October 14, 2004, service was accomplished on Lt. Gilmore [18-1], who responded on November 16, 2004 by filing a Motion to Dismiss pursuant to Rules 12(b)(1) and (6), Fed. R. Civ. P., and a memorandum in support thereof. [18-1; 19-1] One day later, on November 17, 2004, an Amended Motion to Dismiss was filed on behalf of the named defendants, *viz.*, Warden Smith, Unit Manager Miller-Blanks, Counselor James, Lt. Gilmore, and ISM Loosier (collectively, the "Named Defendants"). The Named Defendants, with the exception of Lt. Gilmore, alleged that the complaint should be dismissed as to the Named Defendants because

The Named Defendants' Amended Motion to Dismiss [20-1] should be granted as to Warden Smith, Unit Manager Miller-Blanks, and ISM Loosier because the Plaintiff was not able to effect service upon them. Thus, it appears to the court that the only defendants properly before it (that is, the only defendants who have been properly served in this action) are Case Manager Kidd, Counselor James, and Lt. Gilmore.[12]

On February 17, 2005, the Defendants Case Manager Kidd, Counselor James, and Lt. Gilmore (the "Served Defendants") filed a Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P., and attached affidavits thereto. [38-1] The undersigned issued a second Roseboro order on February 23, 2005 [39-1], and Plaintiff responded to the Served Defendants' Motion to Dismiss on March 28, 2005. [40-1] Accordingly, this matter is ripe for review by the court.

## VI. THE STANDARDS FOR DECIDING A MOTION TO DISMISS, OR FOR SUMMARY JUDGMENT

When resolving a motion to dismiss, a court "presumes all factual allegations in the complaint to be true and accords all reasonable inferences to the non-moving party." Sumner v. Tucker, 9 F.Supp.2d 641, 642 (E.D.Va.1998), *citing* 2A Moore's Federal Practice ¶ 12.07[2.5] (2d ed.1994); *see also* Loe v. Armistead, 582 F.2d 1291, 1295 (4th Cir.1978). As the Plaintiff in this case is *pro se*, and his pleadings are entitled to liberal construction, the complaint will survive a Rule 12(b)(6) motion unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*) (internal quotation omitted); *see also* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (holding that a Rule 12(b)(6) motion should be denied unless

---

[12] It also is noted that the Amended Motion to Dismiss was not filed on behalf of the defendants Unknown Case Manager, Unknown SIA Lieutenant, and Unknown Gang Specialist, as those persons were neither served nor identified. See Amended Motion to Dismiss [20-1] at p. 1. and p. 1., n.1. Also on November 17, 2004, the Plaintiff requested an extension of time in which to submit corrected summonses and USM forms for service. [21-1] A Minute Docket entry states that this Motion was deemed moot by Chambers on December 10, 2004.

"it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations").

In the present case, because the Motions to Dismiss have affidavits attached thereto that the court will consider, the Served Defendants' Motion to Dismiss will be treated as one for summary judgment. See Pueschel v. United States, 369 F.3d 345, 353 n.3 (4th Cir. 2004).[13] As the Supreme Court held in Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion. Felty v. Graves-Humphreys Co., 818 F. 2d 1126 (4th Cir. 1987). Similarly, genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions. Stone v. University of Md. Medical Sys. Corp., 855 F. 2d 167 (4th Cir. 1988).



---

[13] In Pueschel, the panel stated: "We note that Rule 12(b)(6) does not mandate that a district court treat a motion to dismiss as a motion for summary judgment simply because the moving party includes exhibits with its motion. Rule 12(b)(6) only requires that a motion to dismiss be treated as a motion for summary judgment when the motion to dismiss or exhibits present matters outside the nonmoving party's pleadings and the district court does not exclude such matters. Fed.R.Civ.P. 12(b)(6) (stating that [i]f, on a motion ... to dismiss ... matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...."); Harrison v. U.S. Postal Serv., 840 F.2d 1149, 1152 n. 7 (4th Cir.1988) (noting that district court's reliance on exhibits to motion to dismiss did not convert the motion into one for summary judgment because "the facts to which the court so referred were either alleged in the amended complaint or contained in the exhibits thereto"); Wilson-Cook Medical, Inc. v. Wilson, 942 F.2d 247, 252 (4th Cir.1991) (holding that inclusion of supporting memoranda and affidavits did not convert motion to dismiss into motion for summary judgment because the district court did not consider such material).

## VII. ANALYSIS

### A. Introduction

As a *pro se* litigant, Plaintiff's Complaint must be construed liberally by this court. Nevertheless, a careful review of all of the pleadings in this case has led this court to recommend, for the reasons set forth below, that this matter be dismissed.

### B. The Bivens Action

Plaintiff seeks money damages against the Served Defendants in this case, who are sued in their official capacities as employees of the Bureau of Prisons. In Bivens, the Court provided a remedy for money damages against <u>individual</u> federal agents for violation of a plaintiff's constitutional rights. However, a suit against a federal agency or federal officer in his or her official capacity actually states a claim against the United States. Will v. Dept. Of State Police, 491 U.S. 58 (1989). The United States, its departments, and agencies cannot be sued without its express consent, and express consent is a prerequisite to a suit against the United States. United States v. Mitchell, 463 U.S. 206, 212 (1983). Such a suit lies only where the United States has waived sovereign immunity, but the United States has not waived its sovereign immunity for constitutional misconduct. See FDIC v. Meyers, 510 U.S. 471, 477-78 (1994) (holding actions for constitutional torts may not lie against the United States).



The bar of sovereign immunity cannot be avoided by the Plaintiff simply by naming officers or employees of the United States as defendants. Gilbert v. Da Grossa, 756 F.2d 1455, 1458 (9th Cir.1985); *cf.* Hawaii v. Gordon, 373 U.S. 57, 58 (1963). Thus, to the extent that Plaintiff is suing the Served Defendants in their official capacities, the court lacks jurisdiction to hear this complaint and the Bivens action should be dismissed against them.

Finally, as discussed above, because service was not accomplished on the Named Defendants listed in the caption, the court lacks jurisdiction over them, and this action should be dismissed against them as a matter of law. See Fed. R. Civ. P. 4(e).

## C. Whether Plaintiff Has Exhausted His Administrative Remedies

As a second reason for dismissal of this action, the Plaintiff has failed to exhaust his administrative remedies. The Prison Litigation Reform Act of 1996 (the "PLRA"), codified as amended at 42 U.S.C. § 1997e(a), provides in relevant part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also* Porter v. Nussle, 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory."). Thus, the PLRA requires prisoners bringing actions concerning prison conditions or other federal law to exhaust all available administrative remedies before suing in federal court. See Porter v. Nussle, 534 U.S. at 532; Booth v. Churner, 532 U.S. 731, 741 (2001). Justice Ginsberg, writing for a unanimous Court in Porter, explained the impact of the amendments to the PRLA as follows:

> All available remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy, and effective. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. And unlike the previous provision, which encompassed only § 1983 suits, exhaustion is now required for all actions brought with respect to prison conditions, whether under § 1983 or any other federal law. Thus federal prisoners suing under *Bivens v. Six Unknown Federal Narcotics Agents* [citation omitted], must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit.[14]



In Porter, the Supreme Court emphasized that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." 534 U.S. at 532. Furthermore, Porter makes clear that the provisions in 42 U.S.C. § 1997e(a) apply to both state and federal prisoners. Porter, 534 U.S. at 524. Plaintiff's action is one that encompasses

---

[14] Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 988 (2002) (internal quotations and citations omitted).

"prison life," and therefore his case falls within the rule, articulated in Porter, that an inmate's exhaustion of administrative remedies is a prerequisite to filing suit.[15]

A plaintiff's failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) is an affirmative defense that must be raised and pled by the defendant. Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 681 (4th Cir. 2005). In the present case, the Served Defendants have alleged, as an affirmative defense, that Plaintiff failed to exhaust his administrative remedies within the BOP prior to filing suit.[16]

The Code of Federal Regulations, at 28 C.F.R. § 542.10 *et seq.*, sets forth the Administrative Remedy Procedure for Inmates, which is the internal grievance procedure that must be used by BOP inmates when lodging a complaint. This administrative remedy process is applicable to inmates housed at FCI Edgefield, which is a federal prison under the jurisdiction of the BOP.

The grievance procedure is a multi-step process. The first step requires the inmate to file a formal written complaint with the Warden of the prison on a Form BP-9.[17] The inmate's complaint must be filed with the Warden within twenty calendar days from the date of the offending event. 28 C.F.R. § 542.14(a). If the inmate is not satisfied with the Warden's response, the inmate may appeal (using a Form BP-10) to the Regional Director of the BOP within twenty (20) calendar days of the date the Warden signed the response. If the inmate remains dissatisfied with the response, thereafter, an inmate may appeal the Regional Office's response to the General Counsel of the Bureau by completing a Form BP-11 within thirty (30)

---

[15] The Supreme Court also held, in Booth v. Churner, 523 U.S. 731 (2001), that under Section 1997e(a) a prisoner must exhaust his administrative remedies even when the relief the prisoner seeks (money damages) is not available in the prison grievance proceedings.

[16] See Served Defendants' Motion to Dismiss [38-1] at pp. 8-14.

[17] See Affidavit of Roy Lathrop, attached as Exhibit 2 to the Served Defendants' Motion to Dismiss. [38-1]

calendar days of the date the Regional Director signed the response. See 28 C.F.R. §§ 542.14 and 542.15.[18]

It is well-settled that "[t]he exhaustion requirement under the PLRA has been interpreted to require prisoners to pursue administrative grievances until they receive a final denial of their claim, appealing through all available stages in the administrative process." Gibbs v. Bureau of Prison Office, 986 F.Supp. 941, 943-44 (D.Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where the plaintiff did not appeal his administrative claim through all four stages of the BOP grievance process); *see also* Booth v. Churner, 532 U.S. 731, 735 (2001) (affirming the dismissal of a prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); Thomas v. Woolum, 337 F.3d 720, 726 (6th Cir.2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir.) (a prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review), *cert. denied*, 537 U.S. 949 (2002).

Plaintiff alleges in his Complaint that he was ignored when he attempted to exhaust his available administrative remedies, but was denied a BP-9 form, so "Plaintiff in a blank paper made his own BP-9" and submitted it through the inmate mail system.[19] In response, the Served Defendants have provided this court with two Affidavits executed by employees at FCI Edgefield. According to the Affidavit of Roy Lathrop, attached to the Served Defendants' Motion to Dismiss, during the time he was incarcerated at FCI Edgefield, Plaintiff did not file any administrative remedies regarding the allegations set forth in the complaint.[20] Thus, there is no record that Plaintiff pursued any administrative remedies while at FCI Edgefield. Second, the

---

[18] See Declaration of Rippon, attached as Exhibit 16 to Defendants' Motion. [12-1]

[19] See Plaintiff's Opposition [40-1] at p. 8, and handwritten Form BP-9 attached thereto as Exhibit 10.

[20] See Lathrop Affidavit, attached as Exhibit 2 to the Served Defendants' Motion to Dismiss [38-1] at ¶ 4.

Served Defendants have provided the court with an Affidavit executed by Michael Smith, FCI-Edgefield's Administrative Remedy Coordinator for the inmate remedy program. Mr. Smith avers that the Plaintiff never notified him that he was having difficulty obtaining a BP-9 from his Unit Team, and if Mr. Smith had known of such a complaint, he would have provided the Plaintiff with the proper form.[21] Furthermore, the Messrs. Lathrop and Smith have informed the court that on or about June 5, 2003, after Plaintiff had been transferred from FCI Edgefield to FCI Talladega, in Alabama, Plaintiff attempted to file an administrative remedy at FCI Edgefield. This request was returned to Plaintiff because administrative remedies must be filed at the institution where the inmate is currently incarcerated. Although Plaintiff's grievance addressed issues that allegedly occurred at FCI Edgefield, proper procedure dictates that Plaintiff file his grievance at FCI Talladega, which, in turn, would request an investigation and response from FCI Edgefield. However, Plaintiff not file the BP-9 at FCI Talladega, and thus did not adhere to the proper grievance process.

Because Plaintiff failed to exhaust his administrative remedies with respect to the Served Defendants, the court does not have subject matter jurisdiction over Plaintiff's claims against these Defendants, and it is recommended that the claims against the Served Defendants be dismissed without prejudice to allow Plaintiff to exhaust his administrative remedies. See, e.g., Lawrence v. Virginia Dep't of Corrections, 308 F.Supp.2d 709, 716-717 (E.D. Va. 2004) ("If the court determines based on the available evidence, and after plaintiff has had an opportunity to respond, that a prisoner-plaintiff has failed to exhaust the administrative remedies available to

---

[21] See Affidavit of Michael Smith ("Smith Affidavit") at ¶¶ 1 and 3, attached as Exhibit 3 to the Served Defendants' Motion. [38-1]

him, then the court must dismiss the suit without prejudice.").[22]

## RECOMMENDATION

Based upon the foregoing discussion, it is recommended that Lt. Gilmore's **Motion to Dismiss [19-1] be considered moot;** that the Named Defendants' **Motion to Dismiss [20-1] be granted**, and that the Served Defendants' **Motion to Dismiss [38-1] be granted**, and that this suit be dismissed without prejudice.

July 8, 2005
Charleston, South Carolina

George C. Kosko
United States Magistrate Judge

---

[22] In so holding, the district court cited Wyatt v. Terhune, 315 F.3d 1108, 1119-20 (9th Cir.2003) ("If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice."); see also Booth v. Churner, 532 U.S. 731, 741 (2001) (holding that § 1983 suit cannot be brought until administrative remedies are exhausted, even if those processes do not allow for the awarding of the particular remedy plaintiff seeks). The court must do so even if pursuing available administrative remedies would be futile. See Booth, 532 U.S. at 741 n. 6, 121 S.Ct. 1819 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation" AND The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3, (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** *See* Keeler v. Pea, 782 F. Supp. 42, 43-44 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, (D.Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.) 1984, *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation

precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir. 1985)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. \*\*\* This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. \*\*\* We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. \*\*\* A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

*See also* Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

**This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

> **Larry W. Propes, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**